IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ACE PROPERTY & CASUALTY
INSURANCE COMPANY, as successor to
CIGNA PROPERTY & CASUALTY
INSURANCE COMPANY, as successor to
AETNA INSURANCE COMPANY; and
CENTURY INDEMNITY COMPANY, as
successor to CCI INSURANCE COMPANY,
as successor to INSURANCE COMPANY
OF NORTH AMERICA,

        Plaintiffs,

vs.                                  Case No. 05-1301-JTM

SUPERIOR BOILER WORKS, INC.,

        Defendant.

MEMORANDUM AND ORDER

The present matter arises from plaintiffs' and defendant's motions for summary judgment. For the following reasons, the court denies plaintiffs' motion for summary judgment and grants in part and denies in part defendant's motion for summary judgment.

Plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202, in which the plaintiffs request the determination of whether (1) they are obligated to pay only their pro rata share of Superior Boiler's defense and indemnity costs for the underlying asbestos claims based on a pro rata, time-on-the-risk allocation method (Count I), and whether (2) Superior Boiler is responsible for its pro rata share of defense and indemnity costs for the underlying asbestos claims based on a pro rata, time-on-the-risk allocation method for periods during which it was

uninsured and periods during which it placed insurance with a company that later became insolvent (Count II).  Plaintiffs also seek an order directing defendant to reimburse plaintiffs for defense and indemnity costs for the underlying asbestos claims that they have paid in excess of their properly allocated pro rata share.  Defendant argues that despite the fact that the underlying claims were asserted since 1987, plaintiffs made defense and indemnity payments since 1987 pursuant to their insurance contracts, and that plaintiffs made demands on Superior to pay a share of those costs, which Superior refused in 1996.  Plaintiffs now seek a declaration of coverage and equitable contribution for reimbursement of paid amounts.  Furthermore, in its motion for summary judgment, defendant argues that the claims for paid amounts are barred by the applicable Kansas statute of limitations for written contracts (K.S.A. § 50-511) of five years and for equitable contribution (K.S.A. § 60-512) of three years.  Therefore, defendant argues, plaintiffs' claims should be dismissed.

*I.  Factual Background*:

*A.  Defendant's Insurance Coverage*:

Defendant, Superior Boiler, is a manufacturer of industrial boilers and was named as a defendant in thousands of lawsuits by individuals for alleged bodily injury due to asbestos exposure while repairing or working on or near boilers manufactured by defendant.  In certain claims, asbestos exposure began as early as 1938 and as late as 2006.  From September 26, 1965 to September 26, 1966, the Hartford Accident and Indemnity Company (hereinafter "Hartford") provided liability insurance to defendant.  From the period of September 27, 1966 to March 9, 1967 (hereinafter "1966-1967 Uninsured Gap"), after the Hartford policy's expiration and prior to the next coverage date, defendant was either uninsured, self-insured, or maintains no evidence

of insurance. Thereafter, from March 10, 1967 to April 15, 1972, The Home Insurance Company (hereinafter "Home") provided liability insurance to defendant. Plaintiff, ACE Property & Casualty (hereinafter "ACE P&C"), and defendant entered into insurance contracts effective from April 15, 1972 to April 15, 1983. Thereafter, plaintiff, Century Indemnity, and defendant entered into insurance contracts effective April 15, 1983 to April 15, 1986.

Prior to the Hartford coverage which began on September 26, 1965, defendant was either uninsured, self-insured, or maintains no evidence of insurance. (hereinafter "Pre-1965 Period"). Additionally, from March 11, 1970 to April 14, 1970 (hereinafter "1970 Uninsured Gap"), defendant was either uninsured, self-insured, or maintains no evidence of insurance.

Plaintiff Century Indemnity and defendant entered into "claims made" insurance contracts, effective April 15, 1986 to April 15, 1988. These contracts cover claims tendered by Superior Boiler to Century Indemnity during the policy period, but Superior did not make any asbestos claims during this period. For the insurance policy effective April 15, 1988 to April 15, 1989, the policy was a "claims made" insurance policy; however, the policy contained an asbestos exclusion precluding coverage for defendant's asbestos liabilities. Defendant does not allege that it is entitled to coverage under this policy in its counterclaim. Therefore, the insurance policy for that period does not provide coverage for the underlying claims. Plaintiffs call this period from April 15, 1986 to April 15, 1989 the "No Coverage Period."

Both of the policies provided by ACE P&C and Century Indemnity provided similar versions of the following language:

> The [insurer] will pay on behalf of the insured all sums which the
> insured shall become legally obligated to pay as damages because of
> [bodily injury or property damage] to which this insurance applies,

> caused by an occurrence, and the [insurer] shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

Plaintiffs' Exhibit L, ACE P&C Policy No. CBP155738, at SB 00285. The policies define an "occurrence" as "an accident, including injurious exposure to conditions, which results, *during the policy period*, in bodily injury or property damage neither expected nor intended from the standpoint of the insured." *Id*. at SB 00287 (emphasis added).

From April 15, 1989 to the present, defendant was uninsured, self-insured, or maintains no evidence of insurance for the underlying claims (hereinafter "Post-1989 Period").

B.  *Defendant's Underlying Claims*:

According to plaintiffs, defendant notified plaintiffs of the underlying claims and requested payment of defense and indemnity costs for the underlying claims in or around 1989. From 1989 to 2003, plaintiffs provided a defense and paid defense and indemnity costs for defendant for the underlying claims, subject to a full reservation of rights and in accordance with an informal cost sharing agreement with Hartford and Home. In 2003, however, Home was declared insolvent and was placed in liquidation. Plaintiffs began to pay an increased share of defense and indemnity costs following the insolvency.

Plaintiffs have demanded that defendant assume responsibility for its own pro rata share of defense and indemnity costs incurred in the underlying claims for periods during which it was

uninsured, self-insured, or maintains no evidence of insurance, and periods during which it was insured by the now insolvent Home.

*II.  Standard of Review*:

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court must examine all of the evidence in a light most favorable to the opposing party. *Jurasek v. Utah State Hosp.,* 158 F.3d 506, 510 (10th Cir. 1998). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Baker v. Board of Regents,* 991 F.2d 628, 630 (10th Cir.1993). The moving party need not disprove the nonmoving party's claim or defense; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.,* 812 F.2d 1319, 1323 (10th Cir.1987).

The party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. ``In the language of the Rule, the nonmoving party must come forward with `specific facts showing that there is a *genuine issue for trial.*' '' *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in *Matsushita* ). The opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the opposing party must present significant admissible probative evidence supporting that party's allegations. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

*III. Conclusions of Law*:

Plaintiffs argue that there are three questions to be considered by this court: (1) whether defendant is responsible for the pro rata, time-on-the-risk share of defense and indemnity costs for the underlying claims for the following time periods: (a) Pre-1965 period; (b) 1966-67 Uninsured Gap; (c) 1970 Uninsured Gap; (d) No Coverage Period; and (e) Post-1989 Period (collectively "uninsured periods"); (2) whether defendant is responsible for the pro rata, time-on-the-risk share of defense and indemnity costs for insolvent periods; and (3) whether defendant should reimburse plaintiffs for the amounts paid for defense and indemnity costs in excess of their pro rata share?

As plaintiff suggests, the court has jurisdiction under 28 U.S.C. § 1332; the amount in controversy exceeds $50,000 and the parties are citizens of different states. Plaintiffs request a declaration concerning respective duties, rights, and obligations of the parties regarding insurance coverage issues, which fall within the reach of 28 U.S.C. § 2201.

"In making choice of law determinations, a federal court sitting in diversity must apply the choice of law provisions of the forum state in which it is sitting." *Great Plains Mut. Ins. Co., Inc. v. Northwestern Nat. Cas. Co.*, 914 F. Supp. 459 (D. Kan. 1996) (quoting *Shearson Lehman Bros., Inc. v. M & L Invs.*, 10 F.3d 1510, 1514 (10th Cir. 1993)). Where a court interprets a contract, Kansas courts apply the law of the place where the contract was made. *Id*. (citing *Simms v. Metropolitan Life Ins. Co.*, 9 Kan. App. 2d 640, 542, 685 P.2d 321, 324 (1984)). The present case involves contracts made in Kansas. Therefore, the court will apply Kansas law.

*A.  Plaintiffs' Motion for Summary Judgment*:

*1. Declaration of Coverage*:

Plaintiffs argue that the appropriate allocation method for defense and indemnity costs under Kansas law is pro rata, time-on-the-risk. Primarily, plaintiffs note that the Kansas Supreme Court interpreted similar contract language in *Atchison Topeka & Santa Fe Ry. Co. v. Stonewall Ins. Co.*, 275 Kan. 698, 750, 71 P.3d 1097, 1132 (2003), where Santa Fe sought declarations for indemnification for settlements of several thousand claims and lawsuits by employees who alleged hearing losses caused by excessive noise in the workplace. The district court determined that "[noise-induced hearing loss] (NIHL) injuries continue progressively throughout the course of unprotected exposure until the exposure to excessive noise is interrupted." *Atchison*, 275 Kan. at 701, 71 P.3d at 1100. The contractual provision at issue in *Atchison* included the provision where insurers agreed to indemnify Santa Fe for "any and all sums" of damages arising out of an "accident or accidents" in excess of a certain amount. *Atchison*, 275 Kan. at 702-03, 71 P.3d at 1101-02. "Occurrence" was defined as "one or more accidents or series of accidents arising out of or resulting from one event." *Id*. In determining which allocation rule applied to the "all sums" language, the *Atchison* court agreed with the Illinois Court of Appeals in *Missouri Pacific R.R. Co v. Int'l Ins. Co.*, 679 N.E.2d 801 (Ill. App. 1997) (hereinafter "*MoPac*") in holding that joint and several liability is not consistent with the term "all sums" in the insurance policies. *Atchison*, 275 Kan. at 754, 71 P.3d at 1153. The court further held that joint and several liability contradicts the fundamental insurance agreement to indemnify the insured for injuries during a specified policy period. *Id*. The court agreed with the *MoPac* court in holding that "the sums the insurer is obligated to pay must be on account of

property damage arising out of an occurrence during the policy period." *Atchison*, 275 Kan. at 751, 71 P.3d at 1132.  The court explained that the pro-rata, time-on-the-risk allocation was appropriate where "a single continuous occurrence results in an unallocable loss implicating successive policy periods." *Atchison*, 275 Kan. at 753, 71 P.3d at 1134.

      Defendant objects to plaintiffs' motion for summary judgment arguing that the fact that there was a single occurrence in *Atchison* was central to the Kansas Supreme Court's holding in that case.  By adopting the holding of the Illinois appellate court in *MoPac*, which held that pro rata time-on-the-risk allocation of damages should be used if other methods of allocation were not possible, the Kansas Supreme Court noted that in reaching this conclusion, the Illinois appellate court distinguished its previous holding from *Zurich Ins. Co. v. Raymark Indus., Inc.*, 514 N.E.2d 150 (Ill. 1987), which declined to order a pro rata allocation of defense and indemnity obligations.  *Atchison*, 275 Kan. At 753, 71 P.3d at 1134.  The *MoPac* court distinguished *Zurich* on the basis that in *MoPac*, "a single continuous occurrence result[ed] in an unallocable loss implicating successive policy periods." *Id*.  The court agrees with defendant.  In this case, it is unclear whether a single continuous event occurred or whether the claims should constitute multiple occurrences.  In their reply brief, plaintiffs simply say that there is no present controversy or need to decide the number of occurrences here.  In the case where the court decides to address this issue, plaintiffs argue the fact that the underlying claims were brought against multiple defendants other than Superior Boiler is irrelevant.  The court disagrees and believes that due to this unresolved question of whether a single continuous occurrence resulted in an unallocable loss covering successive policy periods, there is a genuine issue as to material

fact which precludes summary judgment on this issue. Therefore, the court denies plaintiffs' motion for summary judgment on this issue.

## 2. Equitable Contribution:

Plaintiffs also argue that reimbursement of defense and indemnity costs are appropriate because plaintiffs have paid over and above their properly allocated pro rata share. Plaintiffs note that reimbursement is appropriate because the parties' pro rata, time-on-the-risk share of defense and indemnity costs can easily be determined. However, the court denies plaintiffs' motion for summary judgment on this issue for the same reason the court denied plaintiffs' motion for summary judgment on the declaration of coverage. Plaintiffs have not proven that a material issue of fact does not exist with respect to the application of the pro rata, time-on-the-risk allocation. The court is not persuaded that plaintiffs have demonstrated that the pro rata, time-on-the-risk allocation is appropriate because it is unclear whether a single occurrence exists with the underlying claims. Under the authority plaintiffs advance, it must be shown that a single continuous occurrence resulted in an unallocable loss covering successive policy periods. The court denies plaintiffs' motion for summary judgment on Count II, equitable contribution because a genuine issue as to a material fact exists which precludes summary judgment.

## B. Defendant's Motion for Summary Judgment:

Alternatively, defendant argues that plaintiffs' claims are barred by the applicable Kansas statutes of limitations. Under Kansas law, a determination of the limitations period is governed by the law of the forum. *Graphic Technology, Inc. v. Pitney Bowes Inc.*, 968 F. Supp. 602, 605 n. 3 (D. Kan. 1997). Both parties agree that Kansas law applies here.

The Federal Declaratory Judgment act contains no statute of limitations of its own. "When the declaratory judgment sought by a plaintiff would declare his entitlement to some affirmative relief, his suit is time-barred if the applicable limitations period has run on a direct claim to obtain such relief. What determines the applicable limitations period is 'the basic nature of the suit in which the issues involved would have been litigated if the Declaratory Judgment Act had not been adopted.'" *118 East 60th Owners, Inc. v. Bonner Properties, Inc.,* 677 F.2d 200, 202 (2nd Cir. 1982); *cf. Columbian Financial Corp. v. Businessmen's Assurance Company of America*, 743 F. Supp. 772, 775 (D. Kan. 1990); *reversed on other grounds*, 956 F.2d 277 (10th Cir. 1992) (where federal ERISA statute does not contain a statute of limitations, court is to apply the "most appropriate state statute of limitations").

*1.  Statute of Limitations: Written Contracts*:

Plaintiffs' first count requests the court to interpret the language of insurance contracts entered by Ace and Century to declare the rights and obligations which concern the duty to defend and duty to indemnify. The applicable statute of limitations for the first count is K.S.A. § 60-511(1) which provides: "The following actions shall be brought within five [5] years: (1) an action upon any agreement, contract or promise in writing." *See also Colombian Financial Corp.*, 743 F. Supp. at 772 (where the court found that K.S.A. § 60-511(1) was the appropriate statute of limitations applicable in a declaratory judgment action which sought interpretation of stop-loss medical insurance policies. The court concluded that interpretation of insurance policies fell within the ambit of "an action upon an agreement, contract or promise in writing" and applied K.S.A. § 60-511(1)).

Since the five year statute of limitations is applicable to the present case, the court must consider when the cause of action accrued between plaintiffs and defendant. "A cause of action for breach of contract accrues when a contract is breached by the failure to do the thing agreed to, irrespective of any knowledge on the part of the plaintiff or of any actual injury it causes." *Cline v. Southern Star Cent. Gas Pipeline, Inc.*, 356 F. Supp.2d 1203, 1211-12 (D. Kan. 2005) (quoting *Pizel v. Zuspann*, 247 Kan. 54, 795 P.2d 42, 54 (1990)); *see also Johnson v. Kan. Pub. Employees Ret. Sys.*, 262 Kan. 185, 935 P.2d 1049, 1054 (1997) (stating that "once a plaintiff realizes that a defendant has no intention of honoring an agreement, the cause of action accrues").

Defendant argues that plaintiffs' cause of action for a declaration of their rights under the insurance policies accrued in 1996, over nine years prior to their filing the present action on September 30, 2005, and is therefore time-barred by K.S.A. § 60-511(1).

In a letter dated December 29, 1995, defendant notes that Superior rejected plaintiffs' demands that Superior owed a percentage of costs and advised plaintiffs regarding asbestos claims:

> Therefore, it is Superior Boiler's position, consistent with the prior conduct of the parties, that it has completely satisfied the requirement that it prove insurance coverage and, therefore, you and the other insurance carriers are required to completely take care of all indemnity payments and defense costs. This is in line with your contractual duties under the insurance policies.

Defendant's Exhibit B, Attachment 1, at pg. 3. In a March 8, 1996 letter, defendant Superior again rejected plaintiffs' assertion that Superior owed a percentage of defense and indemnity costs in the underlying claims and stated: "Superior has not in the past and will not in the future

11

agree to assuming a percentage cost of defense and indemnity payments under the theory that Superior is a 'self-insurer.'" *Id*. at Attachment 2, pg. 2.  Finally, in a May 23, 1996 letter, Superior once again stated that it would not pay any defense or indemnity costs: "The position of Superior has been clear that it will not contribute to defense costs or indemnity payments, until the policy limits of its coverage with CIGNA and the other insurance carriers are exhausted." *Id*. at Attachment 3, pg. 1.

Plaintiffs argue that there is no contract which plaintiffs claim was breached by Superior Boiler when it refused to contribute toward its defense and indemnity costs. Plaintiffs further argue that Superior Boiler's prior refusal to contribute simply cannot transform plaintiffs' claim for declaratory relief into a time-barred breach of contract claim.  However, the court disagrees. Plaintiffs state in their complaint that they request declaratory relief for insurance contract coverage issues that arose as long ago as 1989.  Plaintiffs' Complaint (Dkt. No. 1), at ¶ 11.

Although plaintiffs argue that they now seek a declaratory judgment regarding how defense and indemnity costs incurred in connection with pending and future underlying claims should be allocated, the underlying claims are based on contractual obligations between plaintiffs and defendant.  Plaintiffs' Response to Defendant's Motion for Summary Judgment, at pg. 3.  In fact, Count I of the Complaint seeks a declaration concerning defense and indemnification costs in "Underlying Claims."  Plaintiffs' Complaint (Dkt. No. 1), at Count I Prayer for Relief. Plaintiffs define "Underlying Claims" as the asbestos exposure lawsuits filed against Superior "beginning in approximately 1989." *Id*. at para. 11.  The court finds that these underlying claims are predicated upon the contractual agreement between plaintiffs and defendant.  It is clear that the defendant refused to pay a share of defense and indemnity costs because the defendant

believed the insurance contracts obligated the plaintiffs to pay those costs.  Defendant's refusals occurred on December 29, 1995, March 8, 1996 and May 23, 1996.  In 1996, plaintiffs asserted an "obligation" to be owed by Superior to plaintiffs, but Superior refused to perform that alleged obligation.  By May 1996, plaintiffs were aware that defendant did not intend to pay the asserted obligation.  However, plaintiffs did not file the present action until September 30, 2005, nearly nine years later, in violation of the five year statute-of-limitations period under K.S.A. § 60-511(1).  Therefore, the court grants defendant's motion for summary judgment on this issue.

*2.  Statute of Limitations: Equitable Contribution*:

Defendant also argues that it is entitled to summary judgment because plaintiffs' second claim is barred by the Kansas statute-of-limitations for equitable contribution.

Under Kansas law, an action for contribution is governed by the three-year limitations period provided in K.S.A. § 60-512 which provides: "The following action shall be brought within three (3) years: (1) all actions upon contracts, obligations, or liabilities express or implied but not in writing."  In *Raytheon Aircraft Credit Corp. v. Pal Air Int'l, Inc.*, 923 F. Supp. 1408, 1418 (D. Kan. 1996), the court considered agreements among an airplane company, an airplane buyer, a guarantor of a note, and other parties. The court, citing *Cipra v. Seeger*, 215 Kan. 951, 953, 529 P.2d 130, 133 (1974) noted that *Cipra* held that since plaintiff had not "paid the judgment, his cause of action had not accrued when the petition was filed."  Finding that the defendants alleged that they incurred losses in excess of what they would otherwise owe under the agreements between the parties, the court held that the allegation satisfied the requirement in

*Cipra* that contribution requires a mature claim and allowed the defendants to proceed with their contribution claim under K.S.A. § 60-2413(a).

Defendant notes that by applying the holding of *Cipra* and *Raytheon Aircraft* to the present case, two possibilities result: (1) if the court agrees with plaintiffs that the thousands of underlying claims arise out of a single occurrence, plaintiffs' claim for equitable contribution is barred in its entirety by the three-year limitations period in K.S.A. § 60-512 because plaintiffs' claims for contribution was mature more than three years before they filed their complaint on September 30, 2005 or (2) if each underlying claim arises out of a separate occurrence, plaintiffs' equitable contribution claims for reimbursement of indemnity costs and defense costs paid toward any underlying claim filed before September 30, 2002 and for which plaintiffs paid any costs before September 30, 2002 were mature more than three years before they filed their complaint on September 30, 2005 and are therefore barred by the three-year limitations period and accordingly, should be dismissed.

However, the court previously ruled on plaintiffs' motion for summary judgment that it is unclear as to whether the underlying claims constitute a single occurrence. Therefore, the court determined that summary judgment was inappropriate on plaintiffs' motion. Accordingly, the court finds that summary judgment is not appropriate on the present issue because a material issue of fact exists as to whether the underlying claim constitute a single occurrence under the authorities plaintiffs cite in their motion for summary judgment. Therefore, the court dismisses defendant's motion for summary judgment on Count II, equitable contribution.

IT IS ACCORDINGLY ORDERED this 27th day of August, 2007, that plaintiffs' motion for summary judgment (Dkt. No. 24) is denied and that defendant's motion for summary judgment (Dkt. No. 61) is granted with respect to Count I and denied with respect to Count II.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE
